**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**MARVIN ANTHONY STRUNK,**

     **Plaintiff,**

**vs.**                                   **CIVIL ACTION NO. 2:15-16563**

**CAROLYN W. COLVIN
ACTING COMMISSIONER OF
SOCIAL SECURITY,**

     **Defendant.**

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Orders entered December 31, 2015 and January 4, 2016 (Document Nos. 4 and 5.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 13.)

The Plaintiff, Marvin Anthony Strunk (hereinafter referred to as "Claimant"), filed an application for DIB and an application for SSI on July 25, 2012 (protective filing date)[1], alleging disability as of December 31, 2011, due to degenerative disc disease, depression, anxiety, and

---

[1] The undersigned notes that the ALJ decision dated August 20, 2014 stated that Claimant filed his application for DIB on August 3, 2012. (Tr. at 13, 25.)

scoliosis.[2] (Tr. at 15, 19.) Claimant's applications were denied initially on September 6, 2012 (Tr. at 136-140, 141-145.) and upon reconsideration on February 28, 2013. (Tr. at 147-149, 150-152.) On March 12, 2013, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 153-154.) The hearing was held on July 21, 2014, before the Honorable Maria Hodges. (Tr. at 31-54.) By decision dated August 20, 2014, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-30.) The ALJ's decision became the final decision of the Commissioner on November 6, 2015 when the Appeals Council denied Claimant's request for review. (Tr. at 1-7.) On December 18, 2015, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Standard

    Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

    The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third

_____

[2] On his form Disability Report – Appeal, dated September 14, 2012, Claimant asserted that he "committed suicide" on approximately September 4, 2012. (Tr. at 243.)

inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture

of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years'

impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, December 31, 2011. (Tr. at 15, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: degenerative disc disease, depression, anxiety, and scoliosis. (Tr. at 15, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix

---

inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light work as defined in the regulations except:

> Occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch and crawl. The [C]laimant must avoid concentrated exposure to cold, vibration and pulmonary irritants. The [C]laimant must avoid even moderate exposure to hazards. The [C]laimant can have occasional interaction with co-workers and supervisors, but with no tandem talks. The [C]laimant cannot interact with the public. The [C]laimant can sit for one hour at a time and then must have 15 minutes to stand or walk. The [C]laimant can stand and/or walk for one hour and then needs 15 minutes to sit down before returning to standing and/or walking.

(Tr. at 18, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform past relevant work. (Tr. at 23, Finding No. 6.) At step five of the analysis, the ALJ found Claimant was thirty-nine years old as of the onset date of disability, which is defined as a younger individual. (Id. at Finding No. 7.) The ALJ found that Claimant had at least a high school education, and could communicate in English. (Id. at Finding No. 8.) Employing the Medical-Vocational Rules as a framework, the ALJ determined that Claimant was not disabled, that transferability of job skills was immaterial to the determination of disability, as Claimant's age, education, work experience, and residual functional capacity indicated that there were other jobs existing in significant numbers in the national economy that Claimant could perform. (Tr. at 24, Finding Nos. 9, 10.) On this basis, benefits were denied. (Tr. at 25, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize

the record as a whole to determine whether the conclusions reached are rational." Oppenheim v.

Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by

substantial evidence.

Claimant's Background

Claimant was born on March 11, 1972, and was 42 years old at the time of the

administrative hearing, July 21, 2014. (Tr. at 23, 35.) Claimant had earned his general education

diploma, and was able to communicate in English. (Tr. at 23, 35-36.) He previously worked as a

continuous miner operator, a scoop operator, a general laborer, and a tire re-capper. (Tr. at 23, 36-

38.) Claimant received Social Security disability benefits from 2005 through 2010, but were

discontinued because he worked in 2006 and 2007. (Tr. at 37-38, 86-91.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence, pertaining

to Claimant's arguments and discusses it below.

Holistic Medical, LLC

7

Claimant's general health treatment records from April 17, 2008 through October 23, 2012 were unremarkable; all systems noted to be within normal limits except for those days he had cold-like symptoms. (Tr. at 441-467, 471-497.) Claimant was treated for his depression, anxiety and chronic pain syndrome, due primarily to his back and neck pain, conservatively, and did relatively well or was stable on the medications provided, and was able to perform activities of daily living with rehabilitation and therapy. (Tr. at 471-497, 498-521.) Due to Claimant's complaints of chronic pain in his neck and back, on January 26, 2010, x-rays of his cervical, dorsal and lumbar spine were ordered: the x-ray of his cervical spine noted the fusion at C5 and C6, but was otherwise within normal limits; to determine radiculopathy, an MRI was suggested. (Tr. at 523.) The x-ray of the dorsal spine revealed mild dorsal scoliosis, otherwise within normal limits. (Tr. at 524.) The x-ray of the lumbar spine revealed mild lumbar curve, otherwise normal. (Tr. at 525.)

Appalachian Regional Healthcare, Inc. – Tug Valley

On June 20, 2011, Claimant went to the emergency room because his back pain was exacerbated; he was treated conservatively with medications. (Tr. at 293-297, 368-375.) Later on January 28, 2012, Claimant returned to the emergency room because a rock fell on his right forearm while at work; he was treated conservatively with pain medication and a sling. (Tr. at 289-292.) An x-ray revealed no bone or joint abnormality appreciated; no fracture dislocation, or soft tissue swelling. (Tr. at 358.)

Williamson ARH Hospital

On October 8, 2013, because of exacerbated back pain, Claimant went to the emergency room and was given injections of Decadron, Dilaudid and Phenergan to relieve his back pain. (Tr. at 543-550.) This occurred again on November 8, 2013 (Tr. at 535-540.), Claimant was noted to

be able to ambulate without assistance, but with difficulty (Tr. at 537.), he was given injections of morphine and Norflex and discharged home with prescriptions for Naprosyn and Flexeril. (Id.) On February 20, 2013, after having suffered a fall while lifting his grandchild, Claimant returned to the emergency room due to neck and right wrist pain. (Tr. at 552-567.) X-rays of Claimant's cervical spine showed the fusion at C5 and C6, with degenerative changes at C6 – C7, but indicated an otherwise normal cervical spine. (Tr. at 553.) Regarding his right wrist, an x-ray revealed a minimally displaced scaphoid fracture. (Tr. at 555-557.) Claimant returned on December 7, 2013 due to his back pain; a musculoskeletal examination indicated no extremity tenderness or edema, no local bony tenderness, no paravertebral spasm, no definite trigger point, no significant deformity of lower back, and an adequate range of motion; upon discharge prescriptions for Toradol, Norflex, and Medrol were provided. (Tr. at 609.)

Logan Regional Medical Center

On December 10, 2010, Claimant presented to the emergency room after having slipped on ice and injuring his mid and lower back. (Tr. at 315-325.) X-rays of his dorsal spine revealed no acute or traumatic process seen; x-rays of his lumbar spine revealed no acute process, minimal degenerative vertebral endplate changes. (Tr. at 324.) On August 5, 2011, Claimant returned to the emergency room because he smashed his right thumb in a car door; he was given two Vicodin tablets for pain. (Tr. at 308-314.) On June 9, 2012, Claimant went to the emergency room to have back and chest lacerations from being stabbed in an altercation; being superficial wounds, Claimant was prescribed Bactrin and Norco. (Tr. at 298-307.) Claimant returned to the emergency room on June 27, 2012 for neck pain; Claimant had full range of motion but complained of spasms.

(Tr. at 388.) An echocardiogram report dated December 18, 2014 indicated a normal study, though the mitral valve leaflets were mildly thickened and trace mitral regurgitation. (Tr. at 72-73.)

Three Rivers Medical Center

From September 4, 2012 to September 7, 2012, Claimant underwent inpatient treatment for depression and suicidal thoughts since his wife left him. (Tr. at 377-399.) He was diagnosed with major depressive disorder. (Tr. at 393.) He was given Vistaril, Cymbalta and Trazodone upon discharge; his condition upon discharge was fair, with a GAF score of 52[4]. (Tr. at 377-378.)

Logan Mingo Area Mental Health, Inc.

After Claimant was discharged from Three Rivers Medical Center, he returned to Logan Mingo Area Mental Health to continue outpatient treatment for his depression and anxiety on September 10, 2012, but he was discharged on January 11, 2013 for failing to keep his appointments and for lack of participation. (Tr. at 407.)[5] The last date of service was noted to be October 23, 2012, however, at the time Claimant reported that he was "doing better" and was "not suicidal." (Tr. at 409.)

Evidence submitted to the Appeals Council indicated that Claimant continued mental health treatment from December 29, 2014 through March 24, 2015. (Tr. at 56-68.) His report of unemployment, financial and family troubles returned diagnoses of generalized anxiety disorder; major depression, recurrent; alcohol abuse; chronic back and neck pain; arthritis; hypertension and

---

[4] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

[5] Claimant was also treated for depression and anxiety off and on from April 2003 to December 2009. (Tr. at 412-427.) Claimant had at one time successfully completed a course of treatment on March 29, 2012. (Tr. at 433.)

a GAF score of 50.[6] (Tr. at 65-68.) A progress noted dated January 5, 2015 indicated that Claimant

participated in group therapy to discuss anxiety/depression/PTSD and no suicidal/homicidal

ideations were noted from the group that day. (Tr. at 64.) Group therapy progress notes dated

January 27, 2015 and February 3, 2015 indicated the group members found the sessions beneficial.

(Tr. at 62, 63.) A progress noted for "intensive therapy" dated February 4, 2015 indicated that

Claimant was aggravated due to his marital and family problems, though he denied suicidal and

homicidal ideations. (Tr. at 60-61.) A progress note from the group therapy session on March 2,

2015 indicated that Claimant expressed being discouraged that obtaining his social security was

taking so long, that he could not stand to be around people, and that he had chronic pain in his

lower back and no reflexes in his legs. (Tr. at 59.) Otherwise, it was noted that group members

found the session beneficial and no suicidal/homicidal ideations were noted. (Id.) On March 9,

2015, a medication review with Claimant indicated diagnoses of generalized anxiety disorder;

major depression, recurrent, moderate; chronic back pain; high blood pressure warranted an

increase in Celexa and Buspar for his anxiety/depression, and starting trazodone for sleep/anxiety.

(Tr. at 56-57.) No homicidal/suicidal ideation noted; he had a GAF score of 55.[7] (Id.) A progress

noted dated March 24, 2015 indicated that Claimant was interested in signing up for a new Self-

Esteem Group and that he enjoyed going to church and believed God was the answer to his

problems; no suicidal/homicidal ideation was noted. (Tr. at 58.)

Karnes Medical Services, LLC

---

[6] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of
0 to 100. A GAF of 41-50 indicates that the person has "serious symptoms . . . or any serious impairment in social,
occupational, or school functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental
Disorders ("DSM-IV") 32 (4th ed. 1994).
[7] See footnote 2, supra.

From January 17, 2014 through May 12, 2014, Claimant was treated by Betty Karnes, APRN for his chronic pain and depression. (Tr. at 568-586; 626-638.) Several x-rays were taken on January 17, 2014, five views of Claimant's lumbosacral spine showed lumbar scoliosis and mild degree anterolateral spondylosis at L4-5 level, otherwise within normal limits (Tr. at 584.); frontal and lateral views of the dorsal spine indicated mild dorsal curve, otherwise normal (Tr. at 585.); five views of the cervical spine showed the C5-6 fusion and metal hardware, disc space narrowing at C5-6 and C6-7 levels, otherwise a normal cervical spine. (Tr. at 586.) During a visit on February 26, 2014, he reported that his medications were helping (Tr. at 574.); diagnoses of "backache, unspecified", "essential hypertension, benign", "osteoarthritis, generalized", "abnormal involuntary movements", "curvature associated with other conditions; scoliosis", "other unspecified back disorders", "spondylosis of unspecified site; without mention of myelopathy" were all noted to be "stable". (Tr. at 575.) During a visit on April 21, 2014, Claimant complained of increased neck pain and was given Flexeril. (Tr. at 629-630.) Diagnoses that day were: "cervicalgia", "other unspecified back disorders", "essential hypertension, benign", "osteoarthritis, generalized", "chronic pain syndrome", "backache, unspecified", "depressive disorder", and "generalized anxiety disorder", all were noted to be "stable". (Tr. at 630.) A follow-up visit on May 12, 2014 was essentially unchanged, though Claimant had a headache that kept him in bed for two days. (Tr. at 626-627.) He was noted to be alert and oriented, with appropriate mood and affect. (Tr. at 627, 630)

Pain Management Center

After a referral from Nurse Karnes, the record indicates that Claimant was seen from June 9, 2014 through at least October 29, 2014, by Sai P. Gutti, M.D. for his low back pain. (Tr. at 74,

643-648.) During his initial examination, Dr. Gutti noted that Claimant's C-spine had normal curvature, with decreased range of motion and tenderness at the base of the neck and spasm present, Spurling's test was positive on the left side. (Tr. at 647.) Claimant's SI and lumbar region was noted to have moderate to severe tenderness, with spasms. (Id.) Claimant's mental status was depressed. (Id.) An MRI of the lumbar spine was recommended. (Id.) An MRI was taken on July 9, 2014 of Claimant's lumbar spine which showed diffuse disc dessication, with multiple levels of disc bulging (at L2-3; L3-4; L4-5), no evidence of significant neuroforaminal narrowing or spinal canal stenosis at any levels. (Tr. at 639-640.)

Submitted to the Appeals Council after the administrative hearing, a nerve conduction study performed on July 10, 2014 by Sujata R. Gutti, M.D. indicated that Claimant had left L5 radiculopathy, sensory motor neuropathy, both axonal and demyelinating type, moderate degree. (Tr. at 641.) A follow-up assessment with Sai P. Gutti, M.D. on July 14, 2014 indicated that Claimant had intractable low back pain with lower extremity radiculitis with paresthesia left side worse than the right side, neck pain, cervicalgia and postlaminectomy syndrome. (Tr. at 645.) Claimant had a lumbar epidural steroid injection and was to continue Motrin, Robaxin and Neurontin as well as hydrocodone only for severe pain; Claimant denied any side effects or suicidal ideation from Neurontin. (Id.) On July 30, 2014, Claimant had another injection at his L5-S1 space that he tolerated well and discharged in stable condition. (Tr. at 643.) On August 25, 2014, Claimant returned to the Pain Management Center and reported no side effects from his medication, and that the injection helped with greater than 50% relief. (Tr. at 644.) Clamant was stable functionality wise in activity of daily living on this regimen. (Tr. at 644-645.) A psychiatric assessment was noted as "unchanged" from the last examination; he was to continue medications

and a cervical epidural steroid injection was considered due to spasms being present and deep tenderness over the shoulder blade and trapezius area was noted. (Tr. at 644.) An examination of Claimant's low back revealed moderate deep tenderness and deep tenderness in the midline; tenderness over the sacroiliac joint noted though spasms were less severe. (Id.)

Williamson Physical Therapy

On July 1, 2014, Tiffiney Bentley, MSPT, provided a Medical Assessment of Ability to do Work-Related Activities (Physical) on Claimant. (Tr. at 621-624.) Physical Therapist Bentley opined that Claimant could carry or lift a maximum weight of 10 pounds occasionally, but not frequently in an eight-hour work day. (Tr. at 620.) Claimant could sit three to four hours in an eight-hour work day but only for ten to twenty minutes without interruption. (Tr. at 621.) He was to never climb or stoop, but could occasionally balance; could seldom crouch or kneel, but was unable to assume a crawling position. (Tr. at 622.) Physical Therapist Bentley could not assess environmental restrictions. (Id.) Physical Therapist Bentley relied upon Claimant's chronic back and neck pain, as well as his reporting that he was diagnosed with carpal tunnel syndrome bilaterally to support her assessments. (Tr. at 623.) Claimant was capable of occasional reaching, handling and fingering, but frequently feeling. (Id.) He was unlimited in seeing, hearing, and speaking. (Tr. at 624.)

State Agency Medical Consultant

On February 7, 2013, state agency medical consultant Atiya M. Lateef, M.D., reviewed the record and completed a physical RFC assessment, opining that Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand/walk and sit 6 hours each in an 8-hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb

ladders/ramps/scaffolds; and should avoid concentrated exposure to extreme cold, fumes, odors,

dusts, gases, poor ventilation, and moderate exposure to hazards. (Tr. at 115-116, 130-132.)

State Agency Psychological Consultant

On February 26, 2013, state agency psychological consultant Karl Hursey, Ph.D., reviewed

the record and opined that Claimant had mild restriction of activities of daily living, moderate

difficulties in maintaining social functioning, mild difficulties in maintaining concentration,

persistence or pace, and no repeated episodes of decompensation. (Tr. at 113, 128.) Claimant could

manage brief, structured interactions with the public, supervisors, and co-workers in a non-

adversarial environment and carry out simple, routine tasks. (Tr. at 117-118, 132-133.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that remand is warranted for a number of errors in the ALJ's decision.

(Document No. 12 at 6-18.) First, the ALJ failed to properly evaluate the opinion of Tiffiney

Bentley, MSPT. (Id. at 6-12.) This is a deviation from 20 C.F.R. §§ 404.1527(d) and 416.927(d)

(2013) which provides several factors[8] for every medical opinion must be considered and further,

PT Bentley was an examining source, whose opinion was entitled to more weight under the

Regulations than a non-examiner. (Id. at 6.) The ALJ gave little weight PT Bentley's opinion

because she was not "an acceptable medical source", however, Claimant contends she is at least a

"medical source" to be considered by the ALJ pursuant to 20 C.F.R. §§ 404.1513(a),(d),

416.913(a),(d). (Id. at 6-7.) Further, the ALJ discounted PT Bentley's opinion as being inconsistent

with the RFC which indicated that the ALJ improperly made her RFC assessment prior to

considering all the medical and other evidence, again in contravention to the Regulations, which

---

[8] These factors include (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent
of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors.

undermines the legitimacy of the RFC. (Id. at 8-9.) Moreover, the ALJ's finding that PT Bentley's opinion concerning Claimant's physical limitations were too restrictive was not explained in the decision, where no contrary evidence was cited in support of the ALJ's evaluation of PT Bentley's opinion. (Id. at 9-10.) Finally, Claimant argues that the ALJ supplanted her own lay opinion to discount PT Bentley's, a trained medical professional, which is an improper reconciliation of the conflicting evidence in the record, necessitating remand. [9] (Id. at 11-12.)

Next, Claimant asserts that the ALJ's RFC assessment fails insofar as the only mental limitations included were limitations related to Claimant's moderate difficulties in social functioning. (Id. at 13.) The ALJ's RFC assessment does not account for the moderate limitations in concentration, persistence, or pace the ALJ found to exist while evaluating the severity of his mental impairments. (Id.) In addition to being contrary to the Regulations, Claimant asserts that this error is akin to the one explored in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), where an ALJ's failure to provide any limitation related to Claimant's moderate difficulties in concentration, persistence, or pace in her RFC and controlling hypothetical posed to the VE without explanation requires remand. (Id. at 15-16.). Further, Claimant argues that this omission is not harmless because each of the jobs named by the VE requires concentration, persistence or pace abilities. (Id. at 16.)

Finally, Claimant contends that the new evidence from Sai P. Gutti, M.D. provided to the Appeals Council is new and material under 20 C.F.R. §§ 404.970(b) and 416.1470(b), and further, the evidence "filled an evidentiary gap" that the ALJ noted in her decision when she discredited Claimant's testimony, and because it is a recent treating source opinion, this warrants remand for

---

[9] Grimmitt v. Hechler, 607 F. Supp. 502 (S.D.W. Va. 1985) (the ALJ did not possess the competency to substitute his views for those of a trained professional); McLain v. Schweiker, 715 F.2d 866, 869 (4th Cir. 1983).

consideration of the new evidence pursuant to the jurisprudence of <u>Snider v. Colvin</u>, 2013 U.S. LEXIS 130456 (S.D.W.Va. Sept. 12, 2013). (<u>Id</u>. at 17-18.)

The Commissioner responds that the ALJ's decision was supported by the substantial evidence. (Document No. 13 at 11-20.) In reference to Claimant's argument that the ALJ failed to properly weigh PT Bentley's opinion, the Commissioner argues that she properly discounted same because she was not an "acceptable medical source" pursuant to Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, at *4 (S.S.A.). (<u>Id</u>. at 12.) Further, as an "other source", PT Bentley cannot establish a medically determinable impairment and cannot give a medical opinion, although she can "provide insight" as to the severity of an impairment and a claimant's functioning per SSR 06-03p, 2006 WL 2329939, at *2. (<u>Id</u>.) The ALJ was not required to assign this opinion any weight pursuant to <u>Smith v. Colvin</u>, No. 1:13-15029, 2014 WL 4656122, at *9 (S.D.W.V. Sept. 16, 2014). (<u>Id</u>.) Also, because PT Bentley's opinion was an "other source" is it entitled to significantly less weight under the Regulations. (<u>Id</u>. at 12-13.) Contrary to Claimant's argument, the Commissioner contends that the ALJ was not required to discuss every piece of evidence in the record in detail pursuant to <u>Pack v. Colvin</u>, No. 2:13-25249, 2014 WL 6607019, at *20 (S.D.W.V. Nov. 19, 2014). (<u>Id</u>. at 13.) The Commissioner also argues that the ALJ properly found that PT Bentley's opinion was inconsistent with the medical evidence and points out several instances thereof (<u>Id</u>. at 14.) and despite the opinion being more recent than the other evidence, that is no reason to afford it greater weight, because the consistency of the evidence must be considered against the whole record. (<u>Id</u>. at 15.) Further, the Commissioner contends that Claimant's insistence that the ALJ erred in finding PT Bentley's opinion was inconsistent with the RFC is harmless because as an "other source" opinion, it is was entitled to less weight, and further, it was inconsistent with the medical evidence.

17

(Id. at 15-16.) Finally, the Commissioner states that the ALJ did not substitute her lay opinion for PT Bentley's opinion when she crafted the RFC, because an RFC is an administrative finding, not a medical opinion, and further, the ALJ was not required to obtain an expert medical opinion as to Claimant's RFC assessment in accordance with Hampton v. Colvin, No. 1:14-CV-24505, 2015 WL 5304294, at *28 (S.D.W.V. Aug. 17, 2015), adopted by, 2015 WL 5304292 (S.D.W.V. Sept. 9, 2015). (Id. at 16.)

With regard to Claimant's argument that the ALJ neglected to incorporate her moderate limitations in reference to Claimant's concentration, persistence or pace, the Commissioner argues that the ALJ specifically found that "the [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" and that the ALJ had considered his limitations in concentration, persistence, or pace, and determined that "the only appropriate limitations were occasional interaction with coworkers and supervisors; no tandem [tasks], and no interaction with the public." (Id. at 18.) The Commissioner points out that the ALJ considered the evidence pertaining to Claimant's mental health treatment which provided further support for the RFC assessment and provides an explanation allowing for a reviewing court to conduct a meaningful review. (Id. at 18-19.)

In reference to Claimant's contention that remand is required due to the new and material evidence from Dr. Gutti, submitted to the Appeals Council, the Commissioner argues that the evidence did not fill an evidentiary gap, and that Dr. Gutti's examinations were in line with Claimant's other examinations. (Id. at 20.) The Commissioner argues that Dr. Gutti's treatment notes, like other treatment notes she outlined in her brief (Id. at 14-15.), showed tenderness, spasm, some decreased range of motion, and diminished pinprick sensation, however Claimant's

18

extremities revealed no clubbing or cyanosis, the curvature of his spine was normal, and he had 5/5 (full) strength with 2+ deep tendon reflexes. (Id. at 20.) The Commissioner points out that the evidence from Dr. Gutti noted that Claimant's activities of daily living was functionally stable with treatment, which is not disabled per Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). (Id.)

In reply, the Claimant argues the significant errors committed by the ALJ requires remand in order to correct them. (Document No. 14 at 1-9.) With regard to PT Bentley's opinion, Claimant agrees with this Court's prior explanation that SSR 06-03p "implicitly allows the ALJ leeway not to discuss an opinion from an 'other source' that is duplicative or cumulative of opinions already addressed in the decision, that is tangential to the outcome, or that is integrated or adopted in another opinion explicitly weighed by the ALJ"[10], but contends that the case at bar is different because the PT Bentley evidence is not duplicative or cumulative and further, the Commissioner's insistence that she does not have to consider PT Bentley's opinion on account of her being an "other source" is contrary to the jurisprudence of this jurisdiction: See Pack at *55; Yost v. Colvin, No. 1:15-06828, 2016 U.S. Dist. LEXIS 54893, *45 (S.D. W. Va. Apr. 4, 2016) ("Ruling [06-03p] additionally provides guidance on how the opinions of these other sources should be weighed, stating that the ALJ should consider the same factors that apply to the opinions of 'acceptable medical sources…'"); see e.g., Myers v. Astrue, No. 4:11-62, 2012 U.S. Dist. LEXIS 130875, *23-25 (E.D. Va. July 6, 2012) (holding SSR 06-03p provides opinions by "other sources" are not entitled to controlling weight but must be considered and weighed according to the factors in 20 C.F.R. § 404.1527(b)). (Id. at 1-2.)

---

[10] Pack v. Colvin, 2014 U.S. Dist. LEXIS 163639, *56-57 (S.D. W. Va. Oct. 27, 2014).

Further, Claimant argues that the Commissioner's reliance on <u>Smith v. Colvin</u>, No. 1:13-15029, 2014 WL 4656122, 2014 U.S. Dist. LEXIS 129557 (S.D. W. Va. Aug. 29, 2014) in reference to PT Bentley's evidence as "other source" is misplaced because that decision was not in accord with other decisions by this Court and the dicta therein was based on a misapplication of law that ought not to be perpetuated. (<u>Id</u>. at 2-3.)

Claimant also argues that PT Bentley's opinion should still have been considered when the ALJ formulated the RFC because the Regulations are clear that and RFC assessment must be based on "all of the relevant medical and other evidence" which includes lay evidence and medical source statements. Moreover, Claimant argues that there is no harmless error pursuant to the holding in <u>Mascio v. Colvin</u>, 780 F.3d 632, 639 (4th Cir. 2015) because the ALJ erred by finding PT Bentley's evidence was inconsistent with the RFC, thereby committing a reversible error by failing to follow the proper sequence by evaluating that evidence <u>after</u> she made the RFC assessment. (<u>Id</u>. at 4-5.) Claimant reasserts that the ALJ did not provide sufficient explanation as to how she found PT Bentley's opinion was "too restrictive" in light of Claimant's physical impairments, or how it was inconsistent with the medical evidence. (<u>Id</u>. at 5.) Finally, Claimant argues that the ALJ's inadequate explanation for the weight she assigned PT Bentley's opinion deprives the Court from proper judicial review, and the summary conclusion of the medical evidence supposedly inconsistent with PT Bentley's opinion is simply the ALJ's own lay opinion. (<u>Id</u>. at 5-6.)

Regarding the ALJ's defective RFC assessment, Claimant contends that it remains contrary to the holding in <u>Mascio</u>, because the RFC does not consider the ALJ's own findings of Claimant's deficiencies in concentration, persistence or pace, further, these were never submitted to the VE in the hypothetical, and further, this was not explained in the decision. (<u>Id</u>. at 6-7.) Claimant asserts

that the Commissioner's argument that the ALJ's "paragraph B" criteria explanation as a means to avoid inclusion of Claimant's moderate difficulties in concentration, persistence or pace does not hold water, because the ALJ herself does not explain this, and the Commissioner only provides her own reasoning as a substitute for the ALJ's omission. (Id. at 7-8.) Because this does not cure the error, remand is appropriate. (Id. at 8.)

In closing, Claimant reasserts that consideration of the evidence from Sai P. Gutti, M.D. justifies remand. (Id.)

Analysis

The issues at hand concern three main areas in which Claimant contends the ALJ erred: the first area pertains to whether the ALJ appropriately evaluated the opinion evidence of record, specifically, the opinion of Tiffiney Bentley, a physical therapist, who provided a Medical Assessment of (Physical) Ability to do Work-Related Activities regarding Claimant's impairments[11]; the second area pertains to whether the ALJ made a defective RFC assessment by not including her findings of Claimant's moderate difficulties in concentration, persistence or pace in contravention to controlling case law; and the third area concerns whether the evidence from Sai P. Gutti, M.D. rises to the level necessitating remand.

The Medical Evidence from Williamson Physical Therapy

The ALJ gave "little weight" to PT Bentley's opinion "because it is too restrictive in relation to the claimant's physical impairments"; as a physical therapist, PT Bentley's opinion is

---

[11] The undersigned notes that this alleged error consists of several subparts: first, Claimant takes issue with the ALJ's assigning less weight to Ms. Bentley's opinion; second, Claimant contends the ALJ did not follow the Regulations in evaluating Ms. Bentley's opinion; third, Claimant argues that the ALJ did not properly consider Ms. Bentley's opinion prior to making her RFC assessment (out of sequence pursuant to proper determination of disability); and finally, Claimant asserts the ALJ's explanation for discounting Ms. Bentley's opinion falls short for adequate judicial review and consists of an improper substitute for her own lay opinion in lieu of an expert's for which she has no competence.

not "an acceptable medical source" under the Regulations[12]; and the ALJ found her opinion inconsistent with the overall medical record and her RFC assessment. (Tr. at 23.)

Claimant argues that the manner in which the ALJ considered the opinion evidence of Tiffiney Bentley, MSPT, violated the Regulations, which provide that every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2013). (Document No. 12 at 6-7.) These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner.

Section 404.1513(d) (2015) provides "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." (emphasis added)[13] The Commissioner argues that the use of the word "may" in this Section denotes that the ALJ had discretion to consider or disregard the evidence from PT Bentley, and further, even if the ALJ failed to mention the physical therapist's opinion[14], who was indisputably a one-time examiner, there would have been no error given her review of the other evidence from "acceptable medical sources", including objective medical evidence such as Claimant's x-rays, in her sequential evaluation. (Tr. at 19-21.)

---

[12] Section 404.1513(d)(1) would include a physical therapist as an "other source" which is not listed under subparagraph (a) as "acceptable medical sources." Neither Claimant nor the Commissioner disputes PT Bentley's classification under this Section.
[13] See also Section 404.913(d)(1).
[14] See, Craig v. Chater, 76 F.3d at 590 (4th Cir. 1996).

The undersigned agrees with Claimant that evidence from "other sources" should be considered when an RFC is assessed: Sections 404.1545(a)(3) and 416.945(a)(3) provide that an RFC is assessed "based on all of the relevant medical and <u>other evidence</u>" concerning a claimant's limitations from his or her impairments, which includes "statements about what a [claimant] can still do . . . (<u>See</u> § 404.1513.)" and "descriptions and observations of [a claimant's] limitations from [his/her] impairments . . . (<u>See</u> . . . . § 404.1529.[15])."

Claimant correctly notes that the Regulations provide that "a case record should reflect consideration of opinions by other sources who have seen a claimant in their professional capacity." SSR 06-03p, 2006 WL 2329939, at *6. Indeed, this issue was discussed recently in <u>Yost v. Colvin</u>, 2016 WL 1725787, at *2-3, and further recognized that the Regulations also do not mandate consideration of other source opinions. Of interest here, the <u>Yost</u> case is distinguishable from the situation at bar regarding the devaluation of "other source" evidence based on a number of factual distinctions: the other source evidence came from the claimant's licensed counselor, who had at least twenty-five therapy sessions with him; the counselor had not yet obtained her license as a psychologist, but held a Master of Science degree in psychology and was recognized as a supervised psychologist acting under a licensed psychologist; her records ostensibly provided the basis for some of the ALJ's findings, but his analysis of the records contained several significant inaccuracies; the ALJ's ultimate findings regarding the claimant's mental impairments

---

[15] Additionally, Section 404.1529, entitled "How we evaluate symptoms, including pain" explicitly provides that § 404.1527 explains how opinions are considered and further, under subsection (3), entitled "Consideration of other evidence" again refers to § 404.1527 how "other medical opinions" are weighed. These Sections provided the authority for the ALJ to assign less weight to PT Bentley's opinion.

were contradicted by the licensed counselor's records; and little explanation or rationale was given by the ALJ in his evaluation and treatment of this "other source" evidence.[16]

In this case, not only was the evidence from PT Bentley considered "other source" evidence that did not have the benefit of a supervising "acceptable source", but it was based on a one-time examination, and was competing with evidence of Claimant's physical impairments from "acceptable sources" that the ALJ found more consistent with the overall record, albeit succinctly. The ALJ evaluated all the relevant evidence, including the evidence from PT Bentley, in accordance with Regulations to assess her RFC.  Therefore, the undersigned sees no error in the ALJ's evaluation.

Claimant also argues that the ALJ did not follow the procedural sequence when she expressly stated that PT Bentley's opinion "is not consistent with . . . the above residual functional capacity[.]" which therefore undermines the legitimacy of the RFC. (Document No. 12 at 8-9, Tr. at 23.) The ALJ also expressly stated that the physical therapist's opinion was not consistent with the overall medical record. (Tr. at 23.) Aside from the ALJ's evaluation of this single opinion, there are no other instances provided by Claimant to suggest that the ALJ's RFC assessment was formulated out of sequence or in contravention of the Regulations or law.[17]

SSR 96-8p provides:

RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any "medical source statements" -- i.e., opinions about what the individual can still do despite his or her impairment(s)-- submitted by an individual's treating source or other acceptable medical sources.[18]

---

[16] Id., at *19-22. A review of the opinion suggests that there were no other sources, acceptable or otherwise, of evidence concerning the claimant's mental impairments.
[17] Wallace v. Colvin 2016 WL 749042 (S.D.W.Va. February 1, 2016).
[18] SSR 96-8p, 1996 WL 374184, at*2.

It is noted that the <u>Wallace</u> decision turned on an ALJ's credibility determination after rendering the RFC assessment, a harmful error due in part to the Fourth Circuit's holding in <u>Mascio v. Colvin</u>, 780 F.3d 632, 639-640 (4th Cir. 2015), which necessitated remand. This case differs from the situations presented in <u>Wallace</u> and <u>Mascio</u> because the ALJ herein considered Claimant's credibility before her RFC assessment, which lends legitimacy to the RFC assessment, and further, that the ALJ complied with procedural sequence requirements. It is also important to note that in the <u>Wallace</u> matter, because credibility findings are "virtually unreviewable"[19] on appeal, an unfavorable decision that hinges on credibility and out of procedural sequence, is a grave error.

This case differs from Wallace and Mascio in another way: the ALJ expressly found an "other source" examiner's opinion conflicted with her RFC assessment, as well as with the overall medical record. As noted supra, Section 404.1513 classifies evidence from a physical therapist as "other source", which an ALJ "may" consider. Of importance here, a claimant's credibility, or indeed, a claimant's own statements about the limiting effects of the alleged symptoms is not included in the list of "other sources" under Section 404.1513. This distinguishes the case at bar from those wherein a claimant's apparent discounted credibility after an RFC assessment queered the sequential evaluation process and generally tainted the entire decision. There has been no demonstration in the sequential evaluation that the ALJ failed to properly consider and evaluate the evidence from the "acceptable medical sources" of record prior to assessing Claimant's RFC.

Claimant's next contention concerns the ALJ's failure to explain why she believed PT Bentley's opinion was too restrictive in relation to Claimant's physical impairments, and her failure to discuss what medical evidence conflicted with the physical therapist's findings. (Document No.

---

[19] <u>Wallace</u>, at *4 (internal citations omitted).

12 at 9-10.) This contention can be examined under Social Security Ruling 06-03P, 2006 WL 2329939, at * 5: "Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." This jurisdiction has previously found that there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision;" "[t]o require an ALJ to refer to every physical observation recorded regarding a . . . claimant in evaluating that claimant's . . . alleged condition[s] would create an impracticable standard for agency review, and one out of keeping with the law of this circuit." See, Pack v. Colvin, 2014 WL 6607019, at *20 (S.D.W.Va. Nov. 19, 2014). Claimant's comparison of Newhart v. Colvin, 6:13-01606 (S.D.W.Va. Mar. 31, 2014) to the one at bar regarding an ALJ's conclusory statement finding an opinion was unsupported by the record is inapposite here: Newhart concerned a treating physician, an "acceptable medical source" that generally commands controlling weight.[20] In short, the ALJ's brief discussion of PT Bentley's opinion was not in error, particularly because the evidence supporting the ALJ's disability determination was adequately examined and was from "acceptable medical sources". (Tr. at 20-23.)

Finally, Claimant argues that the ALJ impermissibly[21] substituted her own lay opinion in the place of an expert's as evidenced by the following: she discounted the more recent medical evidence from PT Bentley; she gave more weight to State agency opinions; she admitted that the more recent medical evidence, which was not reviewed by State agency consultants, would have resulted in additional limitations; resulting in the added a sit/stand option to her RFC to account

---

[20] Section 404.1527(c)(2). The Newhart treating physician was the claimant's psychiatrist.

[21] Grimmett v. Heckler, 607 F.Supp. 502 (S.D.W.Va. 1985)(internal citations omitted); Webster v. Colvin, 2014 U.S. Dist. LEXIS 113486 (M.D.N.C. 2014).

for Claimant's degenerative disc disease and radiculopathy issues. (Document No. 12 at 11-12.)

It is noted that "an ALJ is <u>not</u> required to obtain an expert medical opinion as to a claimant's RFC." <u>Hampton v. Colvin</u>, 2015 WL 5304294, at *28 (S.D.W.Va. Aug. 17, 2015), <u>adopted by</u>, 2015 WL 5304292 (S.D.W.Va. Sept. 9, 2015) (emphasis in original) (citing cases); SSR 96-5p, 1996 WL 371483, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment.").

In <u>Starcher v. Colvin</u>, 2013 WL 5504494, at *7 (S.D.W.Va. Oct. 2, 2013)*, the Court explained that

> "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. <u>Only where 'additional medical evidence is received that in the opinion of the [ALJ] ... may change the State agency medical ... consultant's finding'... is an update to the report required.</u>"

<u>Id</u>. (quoting <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir.2011)) (emphasis added) (ellipses and brackets in original). When reviewing a final decision that is based primarily upon an early-issued medical source statement, the Court must examine the record to determine if after-acquired medical evidence might reasonably alter the medical source's findings, and thus require an updated evaluation. <u>Fluharty v. Colvin</u>, 2015 WL 5476145, at *10 (S.D. W.Va. 2015). In this case, the ALJ explicitly accorded "some significant weight" to the State agency opinions, yet did not chiefly rely upon them, which is indicated by the ALJ's additional limitation in Claimant's RFC. (Tr. at 23.)

Regarding RFC assessments, an ALJ has the authority to assign less weight to medical source opinions, particularly those from non-examining consultants if they were rendered prior to

27

additional relevant evidence, and at the same time, an ALJ may reject an opinion that offers more extreme limitations even though they are from a more recent one-time examiner. This situation was recently explored in <u>Yost v. Colvin</u>, 2016 WL 1725787, at *18, where an ALJ's treatment of "acceptable medical source opinions" was deemed appropriate, despite the claimant's argument that the RFC assessment was the product of the ALJ's "inexpert imagination" and contrary to legal standards. <u>Id.</u> at *16. This is similar to Claimant's contention that the ALJ rejected PT Bentley's medical evidence and created an RFC based on her own inexpert opinion. However, the undersigned finds that the ALJ's RFC was properly assessed despite the fact that it was based on additional medical evidence that came after the opinions provided by State agency consultants.

The ALJ heard Claimant's testimony regarding how long he could sit or stand:

ALJ:           Okay. How long can you sit before you need to get out of the chair?

Claimant:    Between, between thirty-five, fifty-five minutes, somewhere along in there.

ALJ:           How long can you stand?

Claimant:    About the same. I mean it, it take – you know it takes spells. It's not like that constantly. It's just –

ALJ:           On average?

Claimant:    It – on average, it – a hour at a time, and I have to sit down.

(Tr. at 41.) The ALJ noted that Claimant started treating at the Pain Management Center with Dr. Gutti, and specifically asked questions relating to his symptoms from his degenerative disc disease and radiculopathy as detailed above. The ALJ succinctly explained the weights afforded to the opinion evidence regarding Claimant's limitations or restrictions and reconciled them with the testimonial evidence concerning Claimant's radiculopathy and degenerative disc disease to assess

the RFC. (Tr. at 18.) From the overall evidence in the record and this District's jurisprudence, the undersigned sees no error here.

RFC Assessment

Claimant asserts that at step three, the ALJ found his severe mental impairments of depression and anxiety resulted in mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. (Document No. 12 at 13; Tr. at 16-17.) The ALJ found that Claimant had "a moderate limitation" in concentration, persistence, or pace, which she based upon Claimant's statements from his adult function reports[22]: he could pay attention for fifteen minutes; did not finish what he started, such as conversations, chores, reading, or watching a movie; could not follow written or spoken instructions; and could not handle stress or changes in routine well. (Id.) However, the only mental limitations included in the ALJ's RFC assessment were limitations related to Claimant's moderate difficulties in social functioning, and fails to account for the moderate limitations in concentration, persistence, or pace. (Id.) Claimant contends that in the prior favorable decision, ALJ Chapman made the same paragraph B findings as the ALJ herein, therefore it is reasonable to expect the mental RFC limitations from before should have applied in the present RFC. (Document No. 12 at 15.) Furthermore, Claimant argues that the present RFC omission of his moderate limitations in concentration, persistence, or pace is akin to the situation presented in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) requiring remand. (Id.)

At steps four and five of the sequential analysis, an ALJ must determine a claimant's RFC for substantial gainful activity. "RFC represents the most that an individual can do despite his or

---

[22] It is noted that these reports are dated November 2, 2012 (Tr. at 262-269.)

her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider a claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545, 416.945. "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1546, 416.946.

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." Id. The Court noted that the ruling must include a narrative as to how the evidence

supports each conclusion, citing specific medical facts and non-medical evidence. Id. The Fourth Circuit further noted that a per se rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (Citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Social Security Ruling 96-7p clarifies when the evaluation of symptoms, including pain, under 20 C.F.R. §§ 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements.

The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities,

and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

     With regard to concentration, persistence or pace, the ALJ found that Claimant exhibited moderate difficulties:

> The claimant noted in his function report he can concentrate enough to watch television. The claimant indicated he could pay attention for 15 minutes. He noted he does not finish what he starts such as conversation, chores, reading or watching a movie. The claimant cannot follow written or spoken instructions. The claimant cannot handle stress or changes in routine well. The claimant had an examination with Logan Mingo Area Mental Health in September 2012. Upon examination, the claimant's thought content appeared to be within normal limits. His memory seemed to be fair for both recent and remote memory. He appeared to be stable, alert and oriented times four. (Exhibit B6E, B5F)

(Tr. at 17.) The ALJ then identified these "paragraph B" limitations not as RFC, but used to rate the severity of the mental impairments. (Tr. at 18.)

     The ALJ properly performed the two-step process required to assess Claimant's symptoms with the objective medical evidence, and due to Claimant's statements regarding the intensity, persistence and functional limitations of his symptoms, the ALJ found them not entirely credible. (Tr. at 22.) It is important to note that in Mascio, the Court determined that nowhere did "the ALJ explain how he decided which of Mascio's statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's residual functional capacity." 780 F.3d at 640. It was this "lack of explanation," the Court held, which "requires remand." Id.[23]

---

[23] The facts of Mascio is a case study of an ALJ decision rife with error: there were conflicting RFC assessments by two State agency consultants, the ALJ's findings were more consistent with one, but did not mention it, and the ALJ's discussion of the other trailed off at the point of weighing the evidence; the RFC was lacking in analysis for meaningful review; and of grave importance, the ALJ assessed the claimant's credibility after the RFC in contravention of the Regulations.

The ALJ recounted Claimant's allegation that he could not work, but contrasted that with all the activities he reported that he could still do in his Function Report. (Tr. at 22.) The ALJ also reviewed Claimant's prior favorable decision, and noted ALJ Chapman's mental impairment findings, including Claimant's moderate difficulties in concentration, persistence, or pace. (Id.) The ALJ discussed the objective medical evidence that was reconciled with Claimant's allegations: treatment records concerning his depression and anxiety indicated that he responded well to medication (Tr. at 20.), that his mood and affect were appropriate (Tr. at 21.), that his thought processes appeared to be within normal limits (Id.), and that when Claimant was at his worst, mentally and emotionally, it was noted that his wife had recently left him and he lost his income from disability benefits. (Tr. at 20.)

The ALJ gave the earlier RFC "little weight" and determined it was "not binding" because Claimant "had just had back fusion surgery", it had been "almost ten years … since this opinion was given", and Claimant "did substantial gainful activity after the [RFC] was rendered." (Tr. at 22-23.) The ALJ gave "great weight" to the State agency consultant regarding Claimant's mental impairments, finding the opinion "internally consistent and well supported by reasonable explanation and the available evidence." (Tr. at 23.) The State agency consultant provided a mental residual functional capacity assessment[24] recognizing Claimant's severe impairments from depression and anxiety, and found that he "can manage brief, structured interactions with the public, supervisors and coworkers in a non-adversarial environment." (Id., Tr. at 132.) The medical sources concerning Claimant's depression and anxiety relied upon by the State agency consultant were primarily the ones discussed by the ALJ: Logan Mingo Area Mental Health, Inc. and Three

---

[24] It is noted that the State agency consultant found Claimant had "mild" difficulties in maintaining concentration, persistence or pace. (Tr. at 113, 128.)

Rivers Medical Center. Claimant testified that he had not been treated at Logan Mingo Area Mental Health since 2012; he did not like the medication prescribed to him at the time. (Tr. at 44.) Claimant continued treatment for depression and anxiety with Betty Karnes, and testified that the medication she had him on helps "to an extent" and that he has no suicidal ideations, though he remains anxious and nervous in a crowd, which he defined as around 10 or 15 people. (Tr. at 44-45.)

In short, the RFC assessed in this case does not present the errors that would necessitate remand under Mascio, and furthermore, the ALJ provided sufficient explanation for her conclusions in the decision, which is supported by the substantial evidence. The ALJ properly considered the entire medical record, including Claimant's statements and testimony, and resolved any conflicts in the evidence. The ALJ assigned great weight to the State agency opinion regarding Claimant's mental residual functional capacity, and accommodated those mental impairments by placing him in a work environment where he would have only occasional interaction with co-workers and supervisors, but no tandem ta[s]ks, and no interaction with the public. (Tr. at 18.) Accordingly, the undersigned finds that the ALJ's RFC assessment was not erroneous.

Evidence Submitted to the Appeals Council

Claimant also argues that remand is required for consideration of the medical records from Sai P. Gutti, M.D. of the Pain Management Center which were submitted to the Appeals Council. (Document No. 12 at 16-18.) Social Security Regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), a court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111

S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, a court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

Pursuant to 28 U.S.C. § 405(g), remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" Evidence is "new" if it is not duplicative or cumulative. Wilkins v. Secretary, Dep't of Health & Human Serv., 953 F.2d 93, 96 (4th Cir. 1991) (en banc). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision shows that additional evidence will not be considered unless the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. §§ 404.970(b), 416.1470(b). This does not mean that the evidence had to have existed during that period; rather, evidence must be considered if it has any bearing upon whether the claimant was disabled during the relevant period of time. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985); Leviner v. Richardson, 443 F.2d 1338, 1343 (4th Cir. 1971). "Pursuant to the regulations . . . , if additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's decision, the evidence is returned to the claimant, and the claimant is advised about her rights to file a new application." Adkins v. Barnhart, 2003 WL 21105103, *5 (S.D. W.Va. May 5, 2003).

As discussed above, the evidence submitted to the Appeals Council consisted of treatment records by Dr. Gutti for Claimant's chronic pain beginning on June 9, 2014 and continued after the administrative hearing. (Tr. at 643-648.) The medical records indicated that Dr. Gutti provided periodic steroid injections into Claimant's spine that resulted in a "50%" improvement in his pain symptoms; Claimant also denied side effects from his medication. (Tr. at 49, 644.) Of importance here, Dr. Gutti reported that Claimant was stable functionality wise in activity of daily living on this regimen. (Tr. at 644-645.) Claimant testified at the administrative hearing that he had not received shots in his back before as treatment for his back pain. (Tr. at 39.) Though treatment for his chronic pain is not "new" evidence, the method of treatment appears to be. As discussed above, the ALJ noted Claimant's radiculopathy and degenerative disc disease in her decision, and included an accommodation for Claimant's symptoms in the RFC. Due to Claimant's positive response to Dr. Gutti's treatment, which apparently stabilized Claimant's functionality in ADL's, the evidence from the Pain Management Center is not material because it would not have reasonably changed the outcome of this proceeding.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's Motion for Judgment on the Pleadings (Document No. 12.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), and **AFFIRM** the final decision of the Commissioner.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules

6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: October 6, 2016.

Omar J. Aboulhosn
United States Magistrate Judge